All right, counsel, you may proceed. Good morning. May it please the court, I'm Ben Sachs-Michaels on behalf of Plaintiff Appellant Ryan Oswald. I'd like to reserve three minutes of rebuttal time, please. All right, watch your clock, please. I hope to discuss with the court this morning three points. The first is why our complaint stated a non-exculpable claim against the directors in this case. The second is why our complaint states claims against the officers. And the third is why the motion for leave to amend the pleading should have been granted. The first issue with respect to the directors is dispositive. The court committed a clear error of law by dismissing the claims against the directors following the demand futility order, and that requires reversal of the 12B6 order. When the district court held that demand was futile, it held that the complaint adequately alleged that the board's decision to stop this special committee investigation over the objection of outside advisors and without getting to the bottom of the wrongdoing was a, quote, conscious disregard for their responsibilities. Due to that conclusion, the district court held that the complaint raised a reason to doubt that the board's decision was a valid exercise of business judgment. So that excused demand under the second prong of the Aronson v. Lewis standard. There's been some dispute and disagreement about the role of the concept of bad faith in the demand futility decision. Setting that aside, the conduct, conscious disregard for responsibilities, that's a term of art under Delaware law, and it describes the type of conduct that the Delaware Supreme Court has held is a non-exculpable violation of the duty to act in good faith. So the underlying conduct that excused demand states a non-exculpable claim for breach of fiduciary duty under Delaware law. Stepping back from that clear principle for a moment, it is also settled Delaware law that when demand is excused under the second prong of Aronson, the business judgment rule is rebutted for the purposes of Rule 12b-6. We cite several cases that say that there's complete agreement under Delaware law regarding that. Why does that matter to us? Our review of the 12b-6 motion is de novo, correct? Yes, that's correct. So why does it matter what previous findings the district court made regarding the demand futility to us? Well, Your Honor, I would say that here appellees are making the same argument that they made below, which is that even though demand was futile because there was a doubt raised that the decision was a valid exercise of business judgment, they should still be entitled to a business judgment presumption for Rule 12b-6. And, in fact, the Ryan v. Gifford case that we cite in our brief addressed the same exact argument and held that, no, in fact, that is not the case. Once — But the demand futility order is not before us. So why does that even matter? If we're just looking at the complaint on the — whether or not it survives — was sufficient to survive 12b-6 on the business judgment rule, why does it matter what happened before? Well, because the holdings in the demand futility order, the district court was bound by its interpretation of the complaint. Yes. The district court was, but we're not, right? Correct. But if this Court is reviewing de novo under 12b-6, I guess to answer your question, Your Honor, I don't know that — would this Court interpret the complaint under 12b-6 review in a manner that conflicted with the district court's demand futility order? That's my understanding of de novo, but I'm new. Right. I defer to the Court. But defendants — excuse me, appellees here argue that they're entitled to a business judgment presumption on the 12b-6 order. And in a situation where demand was previously excused under Rule 23.1, under the second prong of Aronson, there is no remaining business judgment presumption available on Rule 12b-6. I think that's probably my answer to the question. And the McPadden case that both parties rely on for different things explains the way these standards and concepts interact with each other very clearly, I submit. That case was a derivative action involving allegations that demand was futile due to a board decision to engage in a corporate transaction. The plaintiff alleged that the board hadn't reviewed enough information. The court held, the Delaware Court of Chancery held, that the board hadn't reviewed enough information. It was grossly negligent in approving the transaction. So there was a question to doubt — there was a reason to doubt that the decision was a valid exercise of business judgment. But as to the conduct that raised the reason to doubt, it was gross negligence, and that's exculpable conduct under Delaware law. So a claim wasn't stated against the directors in that case. Can I switch a little bit, not to the directors, but to Hart and Nelson? If we apply a claim-by-claim futility analysis, as I understand Delaware law requires us to, how can we say that your claims against Hart and Nelson were futile based on the demand-futility order, since they didn't take part in the decision not to continue with the internal investigation? They were officers, not directors. So, Your Honor, the demand-futility order doesn't address separately whether demand would be futile as to the underlying conduct regarding the directors. In the 12b6 order, the district court characterized the demand-futility order as doing that, but a reading of the decision shows that it's not addressed. So the court didn't grant the 23.1 motion as to Hart and Nelson. It also didn't deny it clearly as to them. What it held, though, was that the board knowingly decided not to get to the bottom of the executive's expenses or find out if a crime had been committed. And that's with respect to the board, but with respect to Hart and Nelson, my understanding is they were not members of the board, right? They didn't have the same fiduciary duty, for example. Correct. Well, actually, Hart was a member of the board, but he wasn't part of the decision because his actions were at issue. But the futility analysis is the same because we're in a situation where, let's say, that demand is futilized to the board, but that it's required as to the officers, to the underlying conduct. We're in a situation where demand was excused because the board refused to conclude this investigation into the expenses, and then shareholders were required to make a demand to the board to investigate the expenses that it just terminated an investigation into in circumstances where the court said that it was a reason to question business judgment. So it's sort of doesn't make any sense as a coherent outcome. Our view is that under the demand-futility order, demand has to be excused as to that conduct of the officers because that's what the board was investigating when it terminated the investigation with a conscious disregard to its duties. And you're saying that with respect to the fact that it would have been futile, not necessarily that the demand-futility order addressed it expressly. Is that correct? Correct. I would say that it is a logical result of the demand-futility order, but not addressed specifically. This is just kind of a little side thing, but I gather Oswald became a shareholder, I've got down, September 24th, 2014. I gather you would concede you have no standing to sue based on activities alleged before that time. Is that correct? You don't have standing. Sort of. How can you sort of have standing? Well, the contemporaneous ownership requirement is one of the bases that the claims were dismissed against the officers. To be clear, that does not affect the claims against the directors. There's no dispute that Oswald has standing. So Oswald purchased his stock on the 24th of September, 2014. At this point, no one had any idea any of this expense stuff was going on. It hadn't been publicly disclosed. The whistleblower complaint was many months later. The board had not been notified of it based on the record we have in front of us. So he purchased his stock. The second amended complaint, which is the complaint that was at issue, alleged that the last of these Nevada parties that Hart took Nelson and others on was in September, 2014. The underlying documents, the work of the forensic accountant, showed that the expenses were incurred on the 19th of September, 2014. We don't know at this point, without any discovery, what sort of expense reimbursement regime Identiv was running. We don't know if he'd submitted these expenses for reimbursement by the time plaintiff purchased his stock. We don't know when they were repaid. You've got a weekend, actually, as it happens, in between the 19th and 24th. So on a Rule 12b-6 motion, inferences being in the favor of the non-movement, it does not seem to us clear here that he lacked standing for that last. Well, admittedly, to the degree the impact of these alleged activities occurred after the purchase of the stock on the 24th, perhaps I agree with you. But even though it was unknown, and admittedly we're at the 12b-6 stage, I don't see how you can argue that to the degree the financial impact of the company occurred before the date the stock was purchased, that your client would have standing. What's your argument to the contrary? Well, I have one argument to the contrary, which is there's also an ongoing wrong exception. We try to address this in our proposed amended complaint, and that actually brings me to why we should have been permitted to amend our complaint. I will concede that contemporaneous ownership, from our perspective, is the debatably, potentially proper reason to dismiss the Our view is that the other reasons are clearly improper under Delaware law. However, if contemporaneous ownership requirement is the basis for a 12b-6 grant, we've submitted this proposed amended complaint that alleges chapter and verse of how this conduct continued for over a year after plaintiff purchased his stock, groups it by type of transaction to show that it was a course of conduct. And I'll say that in this, so for that reason, the So how is it bad faith when the company spent $3 million, apparently, on the investigation, which only uncovered $160,000 worth of non-business expenses? Why? How is that not a reasonable decision to make? Well, so, Your Honor, of course, you're aware that we're not appealed. There's not, that decision is not at issue here at the District Court's human futility decision, not the Board's decision, excuse me, the District Court's decision finding that there was conscious disregard by the Board when it stopped this investigation. But our position on that was, is, continues to be, you have an international auditing firm that is repeatedly imploring the Board that it can't render an audit opinion until the Board has allowed this investigation to complete. You have outside counsel saying they haven't been Oh, no, no. We think there's been enough investigation. We don't want to find out. Well, how is that not reasonable given the cost and the benefits here? I think $3 million versus $164,000. The fiduciary duties that directors owe invoke more than just the cost benefit, like the dollars and cents of the investigation. And in a situation where an auditor is saying, we can't say the reasonable likelihood of a criminal duty of loyalty to the corporation is to conduct the investigation. Well, how would that benefit the corporation, that there would be a further investigation and maybe criminal charges? How is that a benefit to the corporation? Well, the director's fiduciary duty is to protect the corporation. And so, ascertaining what happened and then taking appropriate action against the wrongdoers, hopefully before there is some kind of other sanction, would seem to be the appropriate... It seems like a moral benefit, but I don't see what the actual business benefit is. Well, directors are required to be informed in their discharge of their fiduciary duties. And so, being informed in the discharge of your fiduciary duties means when you have outside... My view of it is, and I think the law supports me, is that when you have outside advisors telling you, we think that there's likely criminal conduct here, you need to investigate it. It's important to investigate it. In one of the other Disney cases that was in Delaware Court of I would agree that that should be a factor, but there's all these other factors involved in that decision, like the cost and what the, you know, anticipated upside of going forward with an investigation. Wouldn't you agree? I would agree that they need to consider... Are Nelson and Hart still employed by this company? I do not believe that they are. Doesn't Judge Bumate's point merit some consideration that you can have accounting and auditing costs that could be staggering, and if you have, shall I say, comparatively de minimis actual costs, that seems questionable. But it seems to me you're saying that if there's potential criminal liability, that overrides everything. Is that correct? In other words, if there's potential criminal liability, they must investigate regardless of the cost. Is that fair? No, Your Honor. I would not make a rule about criminal conduct. I would say that Delaware Courts place tremendous emphasis on the opinions of outside advisors. Outside advisors are a safety valve against many of the corporate wrongs and conflicts that occur. And here the record is very clear that the outside advisors were screaming from the rooftops, effectively, in order for us to discharge our responsibilities, we need you to investigate this. And the Board refused. But why? So suppose they investigated and found that, I guess, Nelson bribed the U.S. Marshal. Then what? Just to correct, Your Honor. Hard. Well, I guess, who knows. Either one of them. Right. I'm sorry. I think the Board is responsible for running the company, both in a manner that is legal and complies with all applicable regulations. Would they be required to turn him over to the police, file a report? I mean, what's the next thing? I think that they'd be required to terminate him with cause and, to the extent possible, cause the company to sue him for any damages to the company by his conduct. All right. Counsel, you're over your time and we'll give you a minute or so afterwards. Thank you, Your Honor. To respond. I understand you're dividing your time. Is it three ways? We are, Your Honor. All right. Thank you. Good luck with that. Yeah. And I'm going to hold you to it, too. Five minutes. It's late. I've got my separate clock here. May it please the Court, my name is Chris McGrath from Paul Hastings, and I represent Appalese, Humphreys, Owsley, and Kremen. And I know that Mr. Varian, who represents Mr. Hard, is going to address the de novo review or not of the 23.1 decision in force. So I'll defer that to him. But our understanding of the law of the case and the way this evolved before Judge Breyer is the only claim that survived the demand futility review, the only claim that could be asserted and evaluated in the Second Amendment complaint, was the alleged premature termination of the special committee investigation. That was it. And it is de novo review of that 12B6 determination, certainly. We do get a little tangled up in Judge Breyer's prior demand futility order because... I understand he switched his finding as to bad faith. Well, I think that's incorrect, Your Honor. If you look at his... That's certainly the way the plaintiff's counsel would view it. Well, I looked at it, too. He kind of made some excuses, like he just adopted Oswald's language. I mean, it's kind of a switch. I think he took a very deliberate, deep look at the case on the 12B6 motion. Second time and not the first time? Correct. And that he made it clear and took pains in the first four pages of his order to distance that finding, explain why he had picked up bad faith language from the plaintiff's and repeated it in his demand futility order, thought better of it, thought that that was... He had not, in fact, made findings of good faith or bad faith. And that's why he proceeded to evaluate the conduct at issue, the conduct alleged in connection with terminating the investigation, and determined that it, at best, rose to the level of gross negligence, which, because of the presence of the exculpatory clause in the charter and bylaws of the company, is excused and, therefore, not actionable. I'm sorry. Which set of defendants do you represent again? Owsley, Humphreys, and Kremen. You're the board. Yes. Mr. Owsley was on the board and was chair of the special committee with Wenzel, who was also an independent director. And then Kremen and Humphreys were board members, and then Humphreys stepped in for Hart when he exited as CEO. So I want to pick up on Judge Bumate's questioning. What is this? Did the board conduct, like, a cost-benefit analysis in terms of deciding to stop the investigation over the advice of its advisors? Well, I think that there's been some rhetoric at the podium this morning, and I would invite... by saying something's not on the record, but I would submit that screaming from the rooftops over the objections of its advisors is not accurate. My understanding is that when the committee received the final report... I'm sorry? Yes or no. Yes, cost-benefit analysis. I'm sorry, what's the question? They conducted a cost-benefit analysis, you're saying. Yes, that was implicit in their determination. They were confronting a reality where they had promptly in May, when this report surfaced, of potential problems with improper expenses being submitted for reimbursement, hired a major outside law firm and a major Big Four accounting firm to come in and evaluate it over four months. They reviewed a million dollars' worth of expenses submitted over two years, I believe down to the $10, over $10 level. And at the end of the day, the board was looking at a fraction of that as potentially problematic, which they might need to remediate, and thinking, wow, we just burned through $3 million of this company's valuable resources to plumb this. And they made the determination at that point they'd seen no evidence of intentional or illegal conduct. And there's nothing in the record that the law firm ever advised that they thought conduct was illegal or likely illegal. The only input from the law firm advisor was, there are potential additional investigative steps you could take. But the board at that point, and I see I'm in my last minute here, Your Honor. You are in your last minute. I have one other question for you. They had the discretion, because Delaware Law squarely places this responsibility of what's in the best interest of the company, what is the cost-benefit analysis, with that board and the powers they delegated to that special committee. And so neither advisor had that. May I ask you a question related to that in your 37 seconds? Okay. Where is it in the record that documents that Hart's compensation for 2013 and 2014 was reduced to account for the improper reimbursements? I don't believe his compensation was reduced, Your Honor. I believe that it was increased so that rather than being a reimbursement, it was a taxable compensation to him. So he had to tax it on that amount. It was re-characterized. I thought the argument was that Hart's compensation for 2013 and 2014 was adjusted downward to account for the improper. I thought it was in the brief. I'll let counsel for Hart address that. Okay. Well, I'm just thinking in terms of your cost-benefit analysis, if the board's saying we don't see criminal liability, we're spending $3 million to, you know, unearth these minor expenses, and anyway we're going to adjust this salary and modem to remediate that amount. I mean, that would all go to this. And he had a repayment obligation. I believe it was $35,000 or $37,000 for certain expenses. And there was a personnel change, which involved his departure as CEO and replacement of the CFO. So all of that was part of what the special committee arrived at after spending $3 million and decided that was enough pain and money to throw at this problem. They were ready to improve their internal controls, move on. They promptly got brand-new auditors. They've never missed a public filing. Their focus was the business, and that's within their business judgment. Thank you, Your Honor. All right. Thank you, counsel. Who's next? May it please the Court. Nicole Ryan, counsel for the appellee. Brian Nelson, who is former chief financial officer of Identiv. Your Honors, there are four independent reasons that the action was correctly dismissed against Mr. Nelson, any one of which, and in this case all of which, are sufficient to affirm the judgment. The first is that the court, the district court, found in its original demand futility order, which has not been appealed here today, that the only claim for which demand was futile was the claim against the board for terminating the special investigation. That is unquestionably not a claim that was asserted against Mr. Nelson, who is not a member of the board. So simply, the law is clear that you can only proceed on claims for which demand is futile. That claim, so the claim against, the only claim that's futile is the claim not against Mr. Nelson. That should end the matter. But in any event, secondly, the court's decision was clearly correct. Demand must be addressed on a claim-by-claim basis. And the suggestion by counsel that simply because a claim may relate in some way to a claim for which demand is futile does not make that claim futile, and there is no law that supports that. And the cases are clear. You must look claim-by-claim. And in, for instance, in the Henry Capital I case, the court made that point clear, said there are claims against the officers, claims against the directors. We're going to first look at demand futility against the claims against the officers. Here, there isn't, and did a separate analysis. And, in fact, as the court clearly recognized, within the complaint itself, both in the Second Amendment complaint, so this was the plaintiff's third complaint, as well as in the proposed Third Amendment complaint, there was not a single allegation, not even a conclusory allegation, that demand was futile for the claim against Mr. Nelson. The only claim was that demand was futile because the board wasn't in a position to sue themselves. So there were no allegations whatsoever that demand would be futile against Mr. Nelson. And that's a distinct claim. The claim against him was that he didn't adequately prevent these reimbursements, that he essentially turned a blind eye. And then the third reason, though, is lack of standing. And this was an indi oh, and just one point to note, on the lack of demand futility, on that point, that actually is an abuse of discretion standard. And clearly the court, district court, did not abuse its discretion in finding a lack of demand futility for the claim against Mr. Nelson. And the third point is the lack of standing. And there is no sort of standing. There is either standing or not standing. And there is simply no allegations in the complaint against Mr. Nelson saying that he engaged in any wrongdoing after the time in which the plaintiff became a shareholder. And so that's a lack of standing. That's an independent basis that the court correctly dismissed it. Plaintiffs suggested that they should have gotten leave to amend. But in the proposed amended complaint, there were still no allegations specific to Mr. Nelson for anything he did after September 24th. And also, the other point, which Pellin's counsel doesn't note, is, of course, even if somehow they had cured the standing problem, which they did not as to Mr. Nelson, of course, that does not in any way affect the district court's decision that there was no demand futility as to Mr. Nelson. They didn't add a single allegation in the proposed amended complaint. They didn't change that. And so clearly, that reason, no matter what, stands. And the last reason, which the court didn't address because it didn't need to address since it dismissed on for two other reasons, is that the complaint fails to state a claim against Mr. Nelson. There are only conclusory general allegations. And essentially, to be able to state a claim for breach of fiduciary duty, they would need to be able to show that he failed to take action in the face of a known duty to act. And the allegations just are not there. So for each of those reasons, the claim against Mr. Nelson was properly dismissed and is addressed. The lack of leave to amend, this was the fourth chance. The plaintiffs presented their proposed complaint, so there was no question what it would say. It didn't fix the demand futility problem. It didn't fix the standing problem to my client. It didn't fix the lack of failure to state a claim. So for each of those reasons, the judgment against Mr. Nelson should be affirmed. Thank you, counsel. Thank you. Well done. Five minutes. Exactly. All the points. Good morning, Your Honors. Robert Varian for Jason Hart. I'd like to go straight to what I see as the heart of the matter with respect to the claims against Mr. Hart. And there really are two bases on which the district court decision should be affirmed. One is the demand futility point, which is what I'd like to emphasize. And the other one is the point about standing. And the second amended complaint doesn't allege that there was any shareholder ownership, this is undisputed, during the period in which the acts that would give rise to liability on behalf of Mr. Hart occurred. But the key point, I think. You're maybe going to get to this, but I want to be sure you address the so-called ongoing misconduct concept that your opponent raises in terms of the standing issue. I'm not sure it makes any difference, but I'd like you to address it. I will address it, Your Honor. I think that the court addressed it, the district court, obviously, on the 12b-6 motion. And I think that analysis was very sound. And he went through it in great detail, Judge Breyer, who's a very careful, thoughtful judge, and sometimes may change his mind. That happens, as we all know. But I'd really like to go straight to the heart, if I may, of the demand futility issue. Now, there's no doubt what the Rule 23.1 demand futility order said. It's very, very clear. It says at the conclusion, and there are other places where it's clear as well, Oswald has created a reasonable doubt that the Board acted in good faith in its decision to end the special committee investigation. That's it. And that's after a very thorough analysis of all the claims that related to things that were subject to the investigation. So very clear in that order itself that you have to make or excuse a demand. That's Rule 23.1. There are legions of cases that say that. There's no issue there. What this order says is that you needed to make a demand as to everything except the Board's decision much later on to end the investigation. Very clear. But if it weren't clear for some reason, it was explicitly clear, at least twice more, and I can read this. I don't think it's all that helpful. It's in the record. But in the 12b-6 motion, the Court says under a heading that talks about the demand futility order, says that brings the claims against Hart and Nelson to a conclusion full stop, and it explains why. And then again in the order on the motion for leave to amend and to add a new plaintiff, he says again it would be futile because the demand futility order determined that the plaintiff doesn't have standing to assert these claims. Very clear. So where does that leave us? This happens all the time. This is not a novel situation. So you need to make or excuse a demand. You have a ruling from a district court that says you didn't make a demand and demand is not excused as to the claims against Mr. Hart. Very clear and reiterated twice, and I can read it repeatedly, absolutely clear. So at that point as counsel, you can make a demand. That happens. Fine. Okay. I'll make a demand, and if it isn't acted on or accepted, then I'll file a demand refused action, which happens all the time. Or, if you decide not to do that, you can appeal the 23.1 ruling. And, of course, that could have been done, and I think it's pretty clear that was not done deliberately for tactical reasons because Mr. Oswald's counsel likes some things that are in the 23.1 ruling, and they want to put their arms all around that and embrace it, not appeal it. That's a choice they're free to make, but it leaves them in a very clear place as a matter of law, no question about it. You could either make a demand or excuse a demand. You didn't make a demand, clear ruling repeated three or four times. Demand is not excused as to the claims against Hart. Claim by claim, defendant by defendant basis, transaction by transaction. The only thing that's left that you have standing, and I say standing in the sense of Rule 23.1 because the courts talk about that, the claims belong to the corporation. As a shareholder, you have no standing or legal right to assert them unless you make or excuse a demand, very uncontroversial stuff. Since you're running out of time, can I ask you this? Sure. Judge Breyer, of course, shall I say, rethought the demand futility order after it was issued. Do you think what he did had the legal effect of changing it, or is that something that needs to be sent back to him so that it can be officially? I'm going to answer that question directly, but I want to say first that it doesn't matter which way that comes out for purposes of the claims against Mr. Hart. Okay. Absolutely clear. Okay. I think what happened, and I was in the middle of all this all the way through, and I've been in front of Judge Breyer many times, I think that I can speculate about a lot of things, but I think he thought more carefully, as Mr. McGrath said, about all of the facts and circumstances. Oftentimes, judges rethink things in a new context, and I think that's exactly what he did, and to his credit, he didn't try to blow past it. He put it right in front of everybody in his order and said, I need to talk about the demand futility order and its impact on this 12B6 motion, and he explained exactly what he did and why. Maybe he changed his mind. Maybe he had a different law clerk who had a different slice through things. There are a lot of possibilities, but judges are entitled to do that, and that's what he did. I think it's very clear. You don't think that anything officially, formally needed to be changed for him to carry out what he stated he was going to do formally? No, absolutely not, Your Honor. And I've been in this situation. I'm sure all of you very experienced judges have seen it many times. Judges change their minds. They interpret their own orders. They can go back and think through things more carefully in a busy district court, and that's clearly what happened here. And there's no reason. First of all, it's not appealed, but there would be no reason to send it back to him under any circumstances, in my view. All right. Thank you, counsel. Thank you. Mr. Sachs-Michaels, you have an additional minute to respond. Thank you. I just would like to point out that while Judge Breyer clearly appears to have on the 23.1 order and the 12B6 order should be consistent under Delaware law. That is, they cannot be opposite of each other. And so to the extent that we're stuck living with the demand futility order, we're in a situation where we're looking at. You think we're bound by his inferences in the 23.1B order? I believe so on the Rule 12B6 order. Well, with respect to the directors, to the extent that there's already an order in the case that holds that the complaint alleges they acted with conscious disregard for their duties, as I said before, under Delaware law that states a claim for non-exculpable conduct. And your theory is based on law of the case or something? Law of the case and also Delaware law is very clear that the inferences are supposed to be the same. Okay. Thank you. Thank you, counsel. Oswald v. Humphreys is submitted. And this session of the court is adjourned for today. Thank you.
judges: Wardlaw, M. Smith, Bumatay